Filed:  August 13, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-1853
(CA-97-43-C)

Planned Parenthood of the Blue Ridge, et al,

Plaintiffs - Appellees,

versus

James L. Camblos, etc.,

Defendant - Appellant.

O R D E R

The Court further amends its opinion filed June 30, 1997, and amended July 28, 1997, as follows:

On page 12, first paragraph, line 4 -- the word "statute" is inserted between "notification" and "in."

On page 12, second full paragraph, lines 12-13 -- the words "an abortion" are inserted between "obtain" and "without."

On page 13, line 4 of indented quotation -- the word "full" is corrected to read "fully."

On page 16, first full paragraph, lines 3 and 5 -- the word "procedure" is inserted after the word "bypass."

On page 19, first full paragraph, last line -- "<u>Akron</u>" is corrected to read "<u>Akron II</u>."

On page 20, first full paragraph, line 16 -- the comma after the word "And" is deleted.

On page 20, first full paragraph, lines 25 and 26 -- the word "criteria" is corrected to read "criterion."

On page 22, first paragraph, line 1 -- the words "a pregnancy" are changed to read "pregnancies."

On page 22, first full paragraph, line 2 -- the word "which" is changed to read "that."

On page 22, footnote 3, line  13 -- the sentence beginning "But it is surely" is changed to begin "It is surely . . . ."

For the Court - By Direction


/s/ Patricia S. Connor
_____
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 97-1853
(CA-97-43-C)

Planned Parenthood, etc., et al,

Plaintiffs - Appellees,

versus

James L. Camblos, etc.,

Defendant - Appellant.

O R D E R

The Court amends its opinion filed June 30, 1997, as follows:

On page 5, line 3 of paragraph after first indented quotation -- a space is added between the words "within" and "parental."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PLANNED PARENTHOOD OF THE BLUE
RIDGE; HERBERT C. JONES, JR., M.D.;
PLANNED PARENTHOOD M, Planned
Parenthood of Metropolitan
Washington; VIRGINIA LEAGUE FOR
PLANNED PARENTHOOD; HILLCREST
CLINIC; RICHMOND MEDICAL
CENTER FOR WOMEN; THOMAS
GRESINGER, M.D.; COMMONWEALTH
WOMEN'S CLINIC; PLANNED
PARENTHOOD S, Planned Parenthood

No. 97-1853

of Southeastern Virginia,
<u>Plaintiffs-Appellees,</u>

v.

JAMES L. CAMBLOS, in his official
capacity as Commonwealth's
Attorney for the County of
Albemarle, and as a representative
of all the Commonwealth's
Attorneys in Virginia,
<u>Defendant-Appellant.</u>

On Application for Stay Pending Appeal.
(CA-97-43-C)

Submitted: June 30, 1997

Decided: June 30, 1997

Before LUTTIG, Circuit Judge.

_____

Injunction stayed by published opinion.

_____

**COUNSEL**

Richard Cullen, Attorney General of Virginia, David E. Anderson, Chief Deputy Attorney General, Claude A. Allen, Deputy Attorney General, William H. Hurd, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellant. Simon Heller, THE CENTER FOR REPRODUCTIVE LAW AND POLICY, New York, New York; Karen A. Raschke, Richmond, Virginia, for Appellees.

_____

**OPINION**

LUTTIG, Circuit Judge:

On February 20, 1997, after 18 years of public debate, the Virginia General Assembly passed, by a substantial margin, Virginia's Parental Notice Act, Va. Code § 16.1-241(V), and on March 22, 1997, Virginia's Governor Allen signed the Act into law. By its terms, the Act was to go into effect at 12:01 Tuesday morning, July 1.

As the title denotes, the Act is a parental <u>notice</u> statute, not a parental <u>consent</u> statute; it prohibits a physician from performing an abortion on an unemancipated minor unless one parent has been notified twenty-four hours in advance of the procedure. The Act also allows notification to be made to a duly appointed legal guardian or custodian of the minor, or one standing <u>in loco parentis</u> to the minor.

The Act expressly excepts from its prohibitions the performance of abortions in circumstances in which the minor seeking the abortion has been the victim of parental abuse or neglect, and circumstances in which either an abortion is immediately necessary to prevent the mother's death or there is insufficient time to permit notification without exposing the minor to serious health risk.

Although the Supreme Court has never held that a parental notification law must include a judicial bypass procedure in order to with-

2

stand constitutional challenge, see Lambert v. Wicklund, 117 S. Ct. 1169, 1171 (1997), the Parental Notice Act includes such a judicial bypass procedure. That procedure permits authorization of an abortion without parental notification for a minor who shows that she is mature and capable of giving informed consent and for an immature minor as to whom it is determined that an abortion would be in her best interest.

The Act confers upon every minor who avails herself of the bypass procedure the right to participate in the court proceedings on her own behalf and to have counsel assist her throughout the proceedings. If the minor so requests, the court is obligated to appoint counsel for the purpose of assisting the young woman in the bypass proceedings.

The Act also provides that bypass proceedings, which are to be conducted before the Commonwealth's Juvenile and Domestic Relations District Court, "shall be confidential." And the statute further provides both that judicial bypass proceedings "shall be given precedence over other pending matters so that the court may reach a decision promptly and without delay in order to serve the best interests of the minor" and that they "shall be heard as soon as practicable but in no event later than four days after the petition[seeking judicial authorization] is filed."

Finally, insofar as is relevant to the matter sub judice, the Act provides any minor for whom judicial bypass of notification is denied "an expedited confidential appeal to the circuit court."

Notwithstanding the Commonwealth's inclusion of a judicial bypass procedure in its Parental Notification Act and of the other aforementioned safeguards, the federal district court for the Western District of Virginia, only hours before the Act was to become effective, preliminarily enjoined enforcement of the Act by the Commonwealth, holding that a substantial probability exists that the Act is facially unconstitutional. The district court had heard argument on the matter over a month earlier.

At 4:00 p.m. on Monday afternoon, following issuance of the district court's order and the district court's subsequent denial of the Commonwealth's motion for stay of its decision, the Commonwealth

3

filed with me, as a single Circuit Judge, a motion to stay the district court's injunction. At 7:45 p.m. that night, following a review of the parties' submissions before the district court, the district court's opinion, and the applicable Supreme Court precedents, I stayed the judgment of the district court pending appeal.

In my judgment, the district court enjoined enforcement of the Commonwealth's Parental Notification Act as a direct result of a misreading of Supreme Court authority and a concomitant failure to afford the Commonwealth the latitude to interpret its laws in the first instance so as to avoid any possible federal constitutional infirmity, a right to which a State is, with rare exceptions, entitled in our federalist government of shared powers. Moreover, after a careful, independent consideration of the applicable authorities from the Supreme Court of the United States, I could not conclude that plaintiffs had shown a substantial probability that they would prevail on the merits of their facial challenge to the Virginia Act. Nor could I conclude that the relative harms to the respective parties were such as to draw into question my assessment of the appropriateness of the district court's injunction based upon the plaintiffs' likelihood of success on the merits of their claims. For these reasons I issued the stay.

I.

A.

The plaintiffs argued before the district court that the Parental Notification Act fails to ensure that the judicial bypass proceedings will be completed expeditiously and that the minor's interests in confidentiality will be sufficiently protected. The district court, however, expressly rested its decision to enjoin enforcement of the Act upon a conclusion that there was a substantial probability that the plaintiffs would prevail on their third claim: that Virginia's Parental Notification Act, and specifically its judicial bypass procedure, unconstitutionally vests in the judges of the Juvenile and Domestic Relations District Court the discretion to decline to authorize a physician to perform an abortion without parental notification, even after finding that the minor woman is mature and capable of providing informed consent. In enjoining the statute on this ground, the district court relied entirely upon the Supreme Court's decision in Bellotti v. Baird, 443

4

U.S. 622 (1979) (Bellotti II), reasoning that, in that decision, the Supreme Court set forth the constitutional standards applicable to state parental notification statutes, not merely parental consent statutes. Thus, said the district court, "[t]his court will . . . apply [Planned Parenthood v.] Casey, [505 U.S. 833 (1992)] and Bellotti II to the case at bar. Bellotti II requires that a judicial bypass satisfy four criteria." See Memorandum Op. at 9. And the court went on to examine the judicial bypass provisions of Virginia's parental notification statute under the criteria identified by the Court in Bellotti II as essential for a judicial bypass procedure within a parental consent statute to satisfy the Constitution.

In Bellotti II, the Supreme Court did not address what, if any, judicial bypass procedures are necessary in the context of a parental notification statute, such as Virginia's. At issue in Bellotti II was only whether a state parental consent statute must include a judicial bypass procedure, and, if it must, the requirements for such a procedure under the Constitution. Thus, the Court held in that case:

> [I]f the State decides to require a pregnant minor to obtain one or both parents' consent to an abortion, it also must provide an alternative procedure whereby authorization for the abortion can be obtained.

443 U.S. at 643 (footnote omitted). The Court then defined the constitutional imperatives for the bypass procedure within parental consent statutes as follows:

> A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained. In sum, the procedure must ensure that the provision requiring parental consent does not in fact

5

> amount to the "absolute, and possibly arbitrary, veto" that
> was found impermissible in [Planned Parenthood v.]
> Danforth, [428 U.S. 52, 74 (1976)].

Id. at 643-44 (footnote omitted).

It is clear, therefore, that the Court in Bellotti II did not articulate the constitutional minima for a bypass procedure within a parental notification statute. As the Supreme Court described Bellotti II in Lambert:

> In Bellotti, we struck down a statute requiring a minor to
> obtain the consent of both parents before having an abortion,
> subject to a judicial bypass provision, because the judicial
> bypass provision was too restrictive, unconstitutionally bur-
> dening a minor's right to an abortion. The Court's principal
> opinion explained that a constitutional parental consent stat-
> ute must contain a bypass provision that meets four criteria
> . . . .

117 S. Ct. 1169 at 1170-71 (emphasis in original; citation omitted); see also id. at 1171 (criticizing Ninth Circuit for failing to recognize that Bellotti II involved a parental consent statute, not a parental noti-fication statute). Indeed, as the Supreme Court itself observed in Lambert, the Court did not even decide, in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502 (1990) (Akron II), whether "a parental notification statute must include some sort of bypass provi-sion to be constitutional." Lambert, 117 S. Ct. at 1171 (citation omit-ted). And, of course, the Court has yet to decide this particular question.

In concluding that the Supreme Court has held that a parental noti-fication statute must meet the very same requirements that obtain for a parental consent statute, the district court seems to have confused the question of the standard of review applicable in facial challenges to abortion statutes and the question of the substantive requirements that a state's judicial bypass must satisfy if it is to meet constitutional standards. It appears that the district court conflated these two distinct questions because of its misreading of the Eighth Circuit's decision in Planned Parenthood v. Miller, 63 F.3d 1452 (8th Cir. 1995), as

6

equating the two separate questions. Thus, for example, and most tellingly, the district court stated that,

> [i]n [Miller], the Eighth Circuit considered whether Bellotti II or Salerno applied to a parental notification statute. The court concluded that "the [Supreme] Court[in Casey, 505 U.S. at 833,] effectively overruled Salerno for facial challenges to abortion statutes" and went on to apply the Bellotti II standard[, and] [s]ignificantly, the Supreme Court denied certiorari of Miller.

Memorandum Op. at 8; see also id. (stating that plaintiffs argue that "Casey left intact the Bellotti v. Baird standard of review for judicial bypass provisions in parental consent statutes" (citations omitted)). The Eighth Circuit in Miller, however, did not reason or hold as the district court believed. That court first decided that the standard of review articulated in Planned Parenthood v. Casey, 505 U.S. 833 (1992), rather than that in United States v. Salerno, 481 U.S. 739 (1987), applies to facial challenges to abortion statutes and then, separately, concluded that a Bellotti II-type bypass procedure is required if a parental notification statute is to be upheld under the Casey standard. As that court framed the standard of review issue before it:

> The critical issue in this case is a threshold one: what is the standard for a challenge to the facial constitutionality of an abortion law? The State would have us apply the test set out in United States v. Salerno, 481 U.S. 739, 107 S. Ct. 2095, 95 L.Ed.2d 697 (1987), under which "the challenger must establish that no set of circumstances exists under which the Act would be valid." Salerno, 481 U.S. at 745, 107 S. Ct. at 2100. Planned Parenthood, on the other hand, contends that the Supreme Court replaced the Salerno test in Casey, ___ U.S. ___, 112 S. Ct. 2791. Under Casey, it claims, an abortion law is unconstitutional on its face if, "in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." Id. at ___, 112 S. Ct. at 2830.

Miller, 63 F.3d at 1456-57. And, indeed, the Eighth Circuit did not even cite Bellotti II in its discussion of the appropriate standard of review. See Miller, 63 F.3d at 1456-58.

7

The district court compounded the error created by its misreading of Miller by misunderstanding the Supreme Court's decision in Lambert as "reinforcing" its misreading of Miller. See Memorandum Op. at 9. Specifically, the district court reasoned that the Supreme Court affirmed in Lambert that Bellotti II applies in the context of parental notification statutes because the Court described the Ninth Circuit's error in that case merely as a "misapplication" of the Bellotti II standard, and not as an application of the "wrong" standard. Thus, said the district court:

> The Supreme Court reinforced the Eighth Circuit's Miller conclusion in Lambert v. Wicklund, 117 S. Ct. at 1169, when it reversed a Ninth Circuit decision which held the Montana Notice of Abortion Act unconstitutional under Glick v. McKay, 937 F.2d 434 (1991). In its opinion, the Court discussed the Ninth Circuit's application of the Bellotti II standard to the Montana act and concluded that the court had misapplied existing case law. Lambert, 117 S. Ct. at 1171. This discussion of the misapplication of the Bellotti II standard -- as opposed to the application of the wrong standard -- and the denial of certiorari in Miller leads this court to conclude that the Supreme Court intends for Casey and Bellotti II to be applied to parental notice bypass provisions. This court will therefore apply Casey and Bellotti II to the case at bar.
>
> Bellotti II requires that a judicial bypass satisfy four criteria.

Memorandum Op. at 9 (emphases in original; footnote and citations omitted). Contrary to the district court's belief, the Court in Lambert said nothing whatsoever concerning the standard of review applicable to facial challenges to abortion regulation statutes, as one would expect given that Lambert was a summary reversal of the Ninth Circuit's decision, without even argument. Indeed, neither Salerno nor Casey is even so much as cited in the Court's relatively brief per curiam opinion in Lambert.

In Lambert, the Supreme Court did, however, as the district court noted, discuss the Bellotti II criteria. But it did so only in demonstra-

8

tion that "the judicial bypass provision . . . examined in Akron II was substantively indistinguishable from . . . the Montana judicial bypass provision at issue [in Lambert]" and, therefore, that the Ninth Circuit's Lambert decision "simply [could not] be squared with [the Supreme Court's] decision in Akron II." 117 S. Ct. at 1171-72. The Court emphatically did not apply Bellotti II, as the district court surmised, having concluded that a parental notification statute must satisfy Bellotti II's requirements for a bypass procedure within a parental consent statute. In fact, the Court went out of its way to repeat both that it had not held in Akron II that a parental notification statute must include a bypass procedure and that it had held only that Ohio's bypass provision "a fortiori . . . satisfied any criteria that might be required for bypass provisions in parental notification statutes" because it "satisfied the four Bellotti criteria required for bypass provisions in parental consent statutes." Lambert, 117 S. Ct. at 1171 (emphases in original). The Court even chided the Ninth Circuit for invalidating Nevada's parental notification statute in Glick v. McKay, 937 F.2d 434 (9th Cir. 1991), the decision as to which the Ninth Circuit concluded in Lambert that it was bound, "[d]espite the fact that Akron II involved a parental notification statute, and Bellotti involved a parental consent statute." In doing so, the Court cited and quoted Justice Stevens' concurrence in the judgment in Bellotti II that Bellotti II did not determine "the constitutionality of a statute which does no more than require notice to the parents, without affording them or any other third party an absolute veto." Lambert, 117 S. Ct. at 1171 n.3 (citing and quoting Bellotti II, 443 U.S. at 654 n.1 (Stevens, J., concurring in the judgment)).

In the end, therefore, the district court correctly seemed to recognize that an issue has arisen as to whether, in Casey, the Supreme Court sub silentio overruled its decision in Salerno on the standard of review applicable to facial challenges to statutes regulating abortion, and therefore that a question exists as to whether the plaintiff in a facial challenge to an abortion statute must show that "no set of circumstances exists under which the Act would be valid," Salerno, 482 U.S. at 745, or instead must show only that "in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." Casey, 505 U.S. at 895. See also Janklow v. Planned Parenthood, 116 S. Ct. 1582, 1583 (1996) (Stevens, J., respecting the denial of certiorari)

9

("Salerno's rigid and unwise dictum has been properly ignored in subsequent cases even outside the abortion context."); id. at 1585 (Scalia, J., dissenting from denial of certiorari) (noting that the Court has "sent mixed signals on the question," but affirming his belief that the Court in Casey did not intend to change the Salerno standard); Fargo Women's Health Organization v. Schafer, 507 U.S. 1013, 1014 (1993) (O'Connor, J., concurring in denial of application for stay and injunction pending appeal) ("In striking down Pennsylvania's spousal-notification provision [in Casey], we did not require petitioners to show that the provision would be invalid in all circumstances. Rather, we made clear that a law restricting abortions constitutes an undue burden, and hence is invalid, if, `in a large fraction of the cases in which [the law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion.'" (emphasis in original)). Compare Casey v. Planned Parenthood, 14 F.3d 848, 863 n.21 (3d Cir. 1994), with Barnes v. Moore, 970 F.2d 12, 14 & n.2 (5th Cir.), cert. denied, 113 S. Ct. 656 (1992).

The district court erred, however, in reasoning from its conclusion that the Eighth Circuit was correct in Miller that Casey overruled Salerno, that Bellotti II perforce establishes the proper standard of review for facial challenges to abortion regulation statutes and directly controls the inquiry as to the constitutionality of judicial bypass procedures within parental notification (and not just parental consent) statutes. It is plain not only that Bellotti II does neither, but also that the scope of the substantive holding of the Court in that decision will be unaffected by the final resolution of the question of whether the standard of review is that in Salerno or Casey. That is, regardless of the standard of review for facial challenges finally adopted, the Court held in Bellotti II only that a parental consent statute must include a judicial bypass procedure and only established the procedures that must be provided for the bypass procedure in such a consent statute.

Accordingly, the district court's conclusion on which its injunction to the Commonwealth rested, namely, that the Supreme Court has held that, in order to be constitutional, a parental notification statute must include a judicial bypass procedure that satisfies Bellotti II's requirements governing bypass procedures in parental consent statutes, was simply in error.

10

B.

From the fact that the district court erred in concluding that the Supreme Court has held that the bypass procedure within a parental notification statute must mirror that procedure required within the context of a parental consent statute, it follows that the district court also erred in what was its effective holding that the Commonwealth's Parental Notification Act necessarily is unconstitutional under the strictures of Bellotti II. Once the district court concluded that Bellotti II provides the constitutional standards by which parental notification statutes are to be measured, the court observed that the Supreme Court in Bellotti II held that "[i]f [a pregnant minor] satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent." Memorandum Op. at 10 (quoting Bellotti II, 443 U.S. at 647-48 (emphasis added by district court)). The court then contrasted this requirement with the relevant provision of the Commonwealth's Act, which provides that, "[a]fter a hearing, a judge may authorize a physician to perform an abortion upon finding that the minor is mature and capable of giving informed consent to the proposed abortion." Va. Code § 16.1-241(V) (emphasis added). Concluding that the Virginia statute confers upon the judicial officer the absolute discretion whether to authorize a physician to perform an abortion without notice, even after finding the minor mature, the district court held that "[t]his discretion violates the Bellotti II rule for `mature' minors." Memorandum Op. at 11.

As the district court correctly recited, the Supreme Court did hold in Bellotti II that a statute falls short of constitutional standards if "it permits judicial authorization for an abortion to be withheld from a minor who is found by the superior court to be mature and fully competent to make this decision independently." Bellotti II, 443 U.S. at 651. But, as explained above, this was a holding in the context of a parental consent statute, not a parental notification statute, such as Virginia's. Therefore, it is simply not the case, contrary to the district court's conclusion, that a parental notification statute which vests some amount of discretion in a judicial officer not to authorize an abortion without notice, even upon a finding of maturity, is necessarily unconstitutional per Bellotti II. And, as explained below, there may well be reasons why the Court might not require, as a mat-

11

ter of constitutional law, that a judicial officer always authorize an abortion without parental notification, even if the Court ultimately does decide that a parental notification statute -- and a single-parent notification statute in particular -- must include a judicial bypass provision in order to satisfy the Constitution. In any event, as is also explained below, it is premature at this juncture even to conclude that the Commonwealth confers any discretion on its judicial officers to require parental notification of a mature minor's decision to obtain an abortion.

II.

That the district court erred in concluding that Virginia's Parental Notification Act is necessarily unconstitutional under Bellotti II does not ipso facto mean that the district court erred in its conclusion that the Act is unconstitutional, or more appropriately, in its conclusion that there is a substantial likelihood that the Act is unconstitutional. However, it is evident from a review of the Supreme Court authorities most directly relevant to the determination of the constitutionality of the Commonwealth's parental notification statute -- cases such as Akron II and Hodgson v. Minnesota, 497 U.S. 417 (1990), which were not even discussed by the district court because it believed itself bound by Bellotti II -- that the district court's injunction is unsustainable even on alternative grounds from those upon which it issued.

In order to sustain the district court's injunction, it would have to be substantially probable that the Supreme Court would announce sequential holdings first, that a bypass procedure is indeed required in the circumstance of a parental notification statute, as opposed to a parental consent statute; second, that the same constitutional requirements as exist for the bypass procedure within parental consent statutes also exist for a bypass procedure within a parental notification statute; third, that the specific requirement of Bellotti II that a judicial officer be required to authorize a bypass upon a finding of maturity, also obtains in the context of parental notification statutes; and, finally, that Virginia's parental notification act actually does purport to allow a judicial officer to deny a minor authorization to obtain an abortion without parental notification even upon a finding of maturity.

Of course, it is possible that the Supreme Court will ultimately assent to such a series of holdings; but it can scarcely be said, based

12

upon its decisions and separate opinions to date, that it is <u>substantially probable</u> that the Court will do so.

A.

The Supreme Court has repeatedly affirmed that the states have a significant interest in encouraging minors to advise and consult with parents in the course of making the abortion decision. The Court has frequently observed, for example, that,

> [p]arental notice and consent are qualifications that typically may be imposed by the State on a minor's right to make important decisions. As immature minors often lack the ability to make fully informed choices that take account of both immediate and long-range consequences, a State reasonably may determine that parental consultation often is desirable and in the best interest of the minor. It may further determine, as a general proposition, that such consultation is particularly desirable with respect to the abortion decision -- one that for some people raises profound moral and religious concerns.

<u>Bellotti II</u>, 443 U.S. at 640; <u>see also Hodgson</u>, 497 U.S. at 458 (O'Connor, J., concurring in part and concurring in the judgment in part) (quoting same). It is unquestionable, therefore, that "the State furthers a constitutionally permissible end by encouraging an unmarried pregnant minor to seek the help and advice of her parents in making the very important decision whether or not to bear a child." <u>H.L.</u> v. <u>Matheson</u>, 450 U.S. 398, 409-410 (1981).

Moreover, the Court has manifestly, and quite pointedly, affirmed the fundamental distinction between a requirement of parental consent and a requirement of parental notification, recognizing that the latter imposes a burden on the abortion decision different at least in degree, and most likely in kind, from the former. Thus, writing for four members of the Court in <u>Hodgson</u>, Justice Kennedy explained that,

> [the difference between notice and consent requirements] was apparent to us before and is apparent now. Unlike

13

parental consent laws, a law requiring parental notice does
not give any third party the legal right to make the minor's
decision for her, or to prevent her from obtaining an abor-
tion should she choose to have one performed. We have
acknowledged this distinction as "fundamental," and as one
"substantially modify[ing] the federal constitutional chal-
lenge."

497 U.S. at 496 (quoting Bellotti v. Baird, 428 U.S. at 145, 148
(1976) (Bellotti I)). And both Justices Stevens and O'Connor have
similarly noted that,

> [a]lthough the Court has held that parents may not exercise
> "an absolute, and possibly arbitrary, veto" over [the abor-
> tion] decision, it has never challenged a State's reasonable
> judgment that the decision should be made after notification
> to and consultation with a parent.

Hodgson, 497 U.S. at 445 (opinion of Stevens, J.) (citation omitted).

B.

Consistent with this view of the relative interests of the state and
the minor woman in the context of parental notification, the Court on
several occasions has affirmed the power of the state to impose paren-
tal notification requirements in circumstances virtually identical to, if
not more burdensome on the abortion right than, those that will arise
under the Commonwealth's new Parental Notification Act.

In Hodgson, for example, the Supreme Court addressed the consti-
tutionality of a state law which required that both parents be notified
of a minor's decision to obtain an abortion. A majority of the Court
concluded that the statute at issue there was unconstitutional absent
a judicial bypass procedure because the state has no legitimate interest
in requiring two-parent notification. The majority of the Hodgson
Court that struck down the two-parent notification requirement absent
the judicial bypass procedure emphasized the unique burdens of two-
parent notification requirements and relied heavily upon the district
court's findings as to the harm that would result from requiring notifi-

14

cation of abusive parents in two-parent homes and absent parents. Id. at 438-443.

Yet, in Hodgson, a separate section of the Minnesota statute provided that if the two-parent notification provision were enjoined, a new two-parent notification provision, identical to the original statute except for the addition of a judicial bypass procedure, would go into effect. And a different majority of the Court held that this "utility" provision was constitutional. The one Justice who was a member of both majorities, Justice O'Connor, concluded that judicial bypass procedures made even the two-parent notification requirement constitutional because they vitiated the "interference with the internal operation of the family" caused by the requirement that both parents be notified. Id. at 461 (O'Connor, J., concurring in part and concurring in the judgment).

Furthermore, four Justices in Hodgson explicitly concluded that a judicial bypass procedure is not constitutionally required even in the two-parent notification context. Id. at 489 (Kennedy, J., concurring in the judgment in part and dissenting in part).

Thus, from the various opinions offered in Hodgson, it is apparent that four Justices believe that a judicial bypass provision is not even required to sustain a parental notification statute, whether it be of the two-parent or the one-parent kind. And it appears, although it is not certain, that Justice Stevens and Justice O'Connor may hold that a judicial bypass procedure is unnecessary in the context of a single-parent notification statute. As Justice Stevens wrote for himself and Justice O'Connor in Hodgson with respect to subdivision 2 of the Minnesota statute, which did not include a judicial bypass provision:

> [I]t is clear that a requirement that a minor wait 48 hours after notifying a single parent of her intention to get an abortion would reasonably further the legitimate state interest in ensuring that the minor's decision is knowing and intelligent. We have held that when a parent or another person has assumed "primary responsibility" for a minor's well-being, the State may properly enact "laws designed to aid discharge of that responsibility." To the extent that subdivision 2 of

15

> the Minnesota statute requires notification of only one parent, it does just that.

Hodgson, 497 U.S. at 448 (opinion of Stevens, J.) (citations omitted). Justice Stevens, in fact, seems to have stated as much rather unequivocally in his separate opinion in Akron II. See Akron II, 497 U.S. at 522 (Stevens, J., concurring in part and concurring in the judgment). But regardless, Justice Stevens and Justice O'Connor certainly believe that a single-parent parental notification statute is constitutional with an appropriate judicial bypass provision. Justice O'Connor believes that even a two-parent notification statute is constitutional with an adequate bypass procedure. Therefore, based upon Hodgson alone, one would most reasonably conclude that six Justices believe that a single-parent parental notification statute is constitutional if it includes an acceptable bypass procedure. See Hodgson, 497 U.S. at 479 (Scalia, J., concurring in the judgment in part and dissenting in part).

And, indeed, in Akron II, decided the same day as Hodgson, the Court upheld Ohio's single-parent notification statute whose judicial bypass procedure is, in relevant respects, constitutionally indistinguishable from, and arguably less protective of the minor's abortion right than, the bypass procedure contained within Virginia's Parental Notification Act. The Court in Akron II held that Ohio's bypass procedures would satisfy even the Bellotti II criteria for a judicial bypass procedure within a parental consent statute, observing that "it is a corollary to the greater intrusiveness of consent statutes that a bypass procedure that will suffice for a consent statute will suffice also for a notice statute." Akron II, 511 U.S. at 511.

The bypass provision in the Ohio statute upheld by the Court in Akron II provided that, "if the court finds, by clear and convincing evidence, that the complainant is sufficiently mature and well enough informed to decide intelligently whether to have an abortion, the court shall issue an order authorizing the complainant to consent to the performance or inducement of an abortion without the notification of her parents, guardian, or custodian." Ohio Rev. Code § 2151.85(C)(1). Virginia's statute provides that "[a]fter a hearing, a judge may authorize a physician to perform an abortion upon finding that the minor is mature and capable of giving informed consent to the proposed

16

abortion." Va. Code § 16.1-241(V). The only possible constitutionally significant differences between these two provisions are the inclusion in the Ohio statute of a "clear and convincing evidence" standard and the apparent absence of any comparable provision in the Virginia statute, and the inclusion in the Ohio statute of the term "shall," rather than the term "may," which appears in the Virginia statute. As to the "clear and convincing evidence" standard, of course, its presence in the Ohio statute actually works a greater burden on the minor's right to an abortion than does a preponderance of the evidence standard. As to the second point, and as explained further below, it is inappropriate in this facial challenge to Virginia's statute for a federal court to presume that the Commonwealth will construe its statute so as to authorize its judicial officers to deny authorization of an abortion without notification to a mature woman if these officers are, as plaintiffs contend, constitutionally required to authorize an abortion in this circumstance.

Second, both the Ohio statute and the Virginia statute provide for judicial bypass of the notification requirement in cases where the court finds that an abortion would be in the best interests of the minor. The Ohio statute authorized an abortion, without notification, for any minor who could prove by clear and convincing evidence either "that there is evidence of a pattern of physical, sexual, or emotional abuse of the complainant by one or both of her parents," or "that the notification of the parents, guardian, or custodian . . . otherwise is not in the best interest of the complainant." Ohio Rev. Code § 2151.85(C)(2). Similarly, the Virginia notification law provides that a minor who cannot establish her maturity is nonetheless entitled to a hearing to "determine whether the performance of an abortion upon the minor without notice to an authorized person would be in the minor's best interest." Va. Code § 16.1-241. If the minor satisfies this burden, the statute provides that the court "shall so authorize" a physician to perform an abortion. Id. Additionally, the Virginia statute at issue here provides that, a physician needs "neither notice nor judicial authorization . . . if the minor declares that she is abused or neglected and the attending physician has reason to suspect that the minor may be an abused or neglected child . . . or if, in the attending physician's good faith medical judgment, (i) the abortion is medically necessary immediately to avert the minor's death or (ii) there is insufficient time to provide the required notice or judicial authorization because delay

17

would create a serious risk of substantial impairment of a major bodily function or substantial physical injury." Va. Code § 16.1-241(V).

Third, both statutes guarantee confidential bypass procedures. The Ohio statute forbade the court to "notify the parents, guardian, or custodian of the complainant that she is pregnant or that she wants to have an abortion," Ohio Rev. Code § 2151.85(D), and further provided that all bypass hearings "be conducted in a manner that will preserve the anonymity" of the minor, including a requirement that "the complaint and all other papers and records that pertain to an action [for judicial bypass] . . . be kept confidential and are not public records." Id. Similarly, the Virginia statute at issue here specifically provides that "[c]ourt proceedings under this subsection shall be confidential," and that "[n]otwithstanding any other provision of law, an expedited confidential appeal to the circuit court shall be available to any minor for whom the court denies an order authorizing an abortion without notice." Va. Code § 16.1-241(V) (emphasis added). Moreover, the Chief Justice of the Virginia Supreme Court, in his role as "the administrative head of the judicial system," Va. Const. Art. VI. § 3, has issued specific instructions to the judges and clerks who will handle cases under the parental notification law to ensure that all records and proceedings be kept strictly confidential. The Chief Justice imposed upon judges and clerks an obligation to adhere to the most rigorous standard of "deep confidentiality," see Circuit and J&DR Judges Materials at 12, and interpreted "[c]onfidentiality of the proceedings (and the records of those proceedings)" as "a right specifically guaranteed by Virginia Code § 16.1-241(V)," id. at 11 (emphasis added).[1] These stringent confidentiality protections are clearly

_____

[1] This provision amply responds to plaintiffs argument below that the law only makes "proceedings" confidential and does not explicitly guarantee the confidentiality of court records. Plaintiff's Memorandum of Law at 21. The Virginia Supreme Court regulations also answer the plaintiffs' second objection that the confidentiality provisions will be circumvented by other sections of the Virginia juvenile code which, while guaranteeing "confidentiality" in juvenile proceedings, also provide that the court shall issue a summons "to the parents, guardian, legal custodian, or other persons as appear to the court to be necessary or proper parties to the proceeding." Va. Code. Ann. § 16.1-263. Tracking the language of the statute itself that confidentiality is to be maintained

18

sufficient to defeat plaintiffs' facial challenge to this newly-enacted statute.

Finally, both statutes provide for expeditious resolution of the bypass issue. Under the Ohio statute, the trial court was required to make its decision within five business days of the filing of the minor's petition, Ohio Rev. Code § 2151.85(B)(1); the court of appeals was required to docket a minor's appeal within four days, Ohio St. § 2505.073(A); and the court of appeals was required to render a decision within five days of docketing the appeal. Id. Assuming that the term "days" in these expedition provisions referred to business days, it could take a minor up to 22 calendar days under the statute to obtain judicial bypass of the notification requirement. The Virginia law, by comparison, requires the court to make its initial bypass determination no later than four days after the filing of a minor's petition, and it further provides that a minor's appeal of a denial of bypass "shall be heard and decided no later than five days after the appeal is filed." As these expedition provisions make no reference to business days, it appears as if the longest permitted interval between a minor's filing of her petition and the resolution of an appeal could be significantly shorter than the twenty-two days in the Ohio statute. Thus, Virginia's bypass procedures are, if anything, more expeditious than the Ohio procedures upheld by the Supreme Court in Akron II.**2**

_____

"[n]otwithstanding any other provision of law," the Virginia Supreme Court instructed that "[t]he customary exceptions to confidentiality which are found in or read into Virginia Code §§ 16.1-302 and --305 are not applicable to these bypass proceedings." See Circuit and J&DR Judges Material at 12. Furthermore, the regulations provide that "[t]he petitioner is the only party to [the bypass] proceeding" and that "[n]o parent, guardian, custodian, or other person standing in loco parentis to the petitioner should be served with a notice" of the proceeding. The Virginia Court's interpretation is clearly the most logical synthesis of the Act and the background provisions governing juvenile proceedings: it would make little sense for a judge to conclude that a parent is a "necessary or proper part[y]" to a proceeding, the very purpose of which is to avoid giving that parent notice of her child's actions.

**2** Plaintiffs argued before the district court that, even though the Virginia statute requires that proceedings under the Act be "given prece-

19

C.

In the face of these authorities, and <u>Hodgson</u> and <u>Akron II</u> in particular, it would be reasonable to conclude that the Supreme Court may not even require that a single-parent notification statute include a judicial bypass procedure in order to pass constitutional muster. Even if the Court does conclude that such a procedure is necessary, however, it is all but certain, from the distinctly different burdens which the Court believes are imposed by consent and notification statutes, that it would not impose the <u>identical</u> requirements for notification bypass as for consent bypass. For example, it does not follow from the fact that the court has held that a minor's maturity is ample basis upon which to deny the parents veto authority over the abortion decision (in the form of a consent requirement), that the Court would also hold that maturity likewise necessarily deprives the parents of their interest in notification. The Court could hold that even a mature minor's abortion right is not unduly burdened by a single-parent notification requirement, in contrast to a consent requirement. And the Court could, quite possibly, hold that a mature minor's abortion decision is not unduly burdened by a residual discretion in a judicial officer to require parental notification, because such a discretion, and the concomitant notification, does not deprive the minor of the ultimate decision as to whether or not to have the abortion. That is, it is quite possible that the Court would not impose a requirement that the judicial officer authorize an abortion for every minor whom he determines to be mature, a requirement from <u>Bellotti II</u> which is related to, but distinct from, <u>Bellotti II</u>'s first criterion. <u>Compare Akron II</u>, 497 U.S. at 511 (describing the first <u>Bellotti II</u> criterion only as being that

_____

dence over other pending matters" so that the court "may reach a decision promptly and without delay in order to serve the best interests of the minor," Va. St. § 16.1-241, and that those proceedings "shall be heard as soon as practicable but in no event later than four days after the petition is filed," Va. St. § 16.1-241, a judge may nevertheless flout the clear language of the statute and withhold decision for an indefinite time after hearing a case under the act. Not only does this argument inappropriately ascribe a form of lawlessness to the judges of the Commonwealth of Virginia, it is irrelevant in the context of a facial challenge to this statute.

20

"the procedure must allow the minor to show that she possesses the maturity and information to make her abortion decision, in consultation with her physician, without regard to her parents' wishes" (citing Bellotti II, 443 U.S. at 643)), with District Court Memorandum Op. at 9 (stating that Bellotti II's first criteria is that "the court hearing the young woman's request must authorize the abortion if she possesses the maturity and information to make her abortion decision . . . .'" and citing Akron II, 497 U.S. at 511, for that proposition).

But even were the Court to import wholesale the Bellotti II criteria and other requirements directly into the parental notification context, it seems all but certain that it would sustain, in a facial challenge, a procedure such as that in Virginia's Parental Notification Act, which, at the very least arguably, provides all of the protections required by Bellotti II for parental consent statutes. Certainly, it cannot be concluded that there exists a substantial probability that such a procedure is unconstitutional.

This would seem to be all-the-more apparent in the wake of Casey, wherein the Court emphasized that,

> [w]hat is at stake is the woman's right to make the ultimate decision, not a right to be insulated from all others in doing so.

505 U.S. at 877 (emphasis added), and reminded that,

> [r]egulations which do no more than create a structural mechanism by which the State, or the parent or guardian of a minor, may express profound respect for the life of the unborn are permitted, if they are not a substantial obstacle to the woman's exercise of the right to choose.

Id. Thus the Court held in that case that an informed consent statute, which permitted women to obtain abortions only after being given truthful and nonmisleading information regarding the nature of the abortion procedure, did not "unduly burden" the abortion right, notwithstanding the fact that the information that was required by the statute to be provided could dissuade some women from terminating

21

pregnancies, because the provision merely "facilitates the wise exercise of that right." Id. at 888.

D.

In the unlikely event that the Court were to impose on parental notification statutes the identical procedural requirements that it has held are constitutionally essential for consent statutes, it is, to be sure, at least possible that the Court could invalidate a statute such as the one at issue here on the ground relied upon by the district court (under its mistaken reading of Bellotti II as requiring invalidation of Virginia's statute on this ground) to enjoin the state's enforcement of its parental notification statute;3 namely, that the Parental Notification Act provides that, "[a]fter a hearing, a judge may authorize a physician to perform an abortion upon a finding that the minor is mature and capable of giving informed consent to the proposed abortion," Va. Code § 16.1-241(V) (emphasis added), whereas the Court held in Bellotti II that, under the bypass procedure within a parental consent statute, "[i]f a pregnant minor satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent." See Bellotti II, 443 U.S. at 647-48 (emphasis added). But it is far-fetched to conclude that the Court would strike down a statute like Virginia's on this ground, and especially in a facial challenge such as that waged at this juncture by plaintiffs.

_____

3 The district court was not required to address plaintiffs' alternative arguments that the Commonwealth's Parental Notification Act is unconstitutional for the additional reasons that it fails to guarantee that the bypass procedure will be completed expeditiously; that the minor's right to confidentiality will not be abridged; and that the statute's criminal provisions are impermissibly vague. However, the plaintiffs' arguments notwithstanding, it is unimaginable that the Court would hold unconstitutional the extensive procedures Virginia has put in place to ensure confidentiality and expeditious resolution of the abortion question within the bypass procedure. See discussion supra; see also Hodgson, 497 U.S. at 427 and n.9; Planned Parenthood v. Ashcroft, 462 U.S. 476 (1983). It would seem no more likely that the Court would strike down this Act, on a facial challenge, as unconstitutionally vague. It is surely true that there is not a substantial probability that it would invalidate the Parental Notification Act on these grounds.

22

Even if the Constitution does require, as the plaintiffs and the district court presume based upon Bellotti II, that the juvenile courts excuse a minor from parental notification upon a showing of maturity, Virginia law clearly and expressly requires that Virginia courts interpret statutes so as to save them from unconstitutionality:

> There is a presumption that the legislature in the passage of an act did not intend to violate the constitution of the state or of the United States, and if such an act is susceptible of two constructions, one of which would make the same invalid as in violation of the state or federal constitutions and the other give validity to the act, the latter interpretation will be adopted upon the theory of legislative intent not to violate any provision of either of such instruments.
>
> Only when it is plainly in violation of the constitution may the court so decide.

17 M.J., Statutes, § 56. Therefore, even if Bellotti II's requirement for consent statutes applies in the parental notification context, the Virginia courts would be required to interpret the term "may" in § 16.1-241(V) so as not to confer discretion upon the juvenile courts, so long as the statutory language is "susceptible" of such an interpretation. There is no question that the Virginia Supreme Court regards the term "may" as susceptible of an interpretation that would render this provision mandatory. In fact, the Virginia Supreme Court recently interpreted the term "may" to be mandatory, despite the inclusion of the word "shall" elsewhere in the same statute, in part to avoid an unconstitutional construction. Harper v. Virginia Dep't of Taxation, 462 S.E.2d 892 (Va. 1995). That such a saving construction is available if necessary is alone sufficient to demonstrate the error in the district court's conclusion that, while the federal courts and the Virginia state courts are obligated to construe state statutes so as to avoid their unconstitutionality, we would both be without the authority to "rewrite" what the district court characterized as the "express, carefully thought-out words of the Virginia General Assembly." Memorandum Op. at 12.

In any event, the Commonwealth maintains that the statutory term "may" need not confer discretion upon the juvenile courts to deny a

23

mature minor a judicial bypass in circumstances where an abortion would otherwise be lawful, and there is no reason to conclude that the Virginia courts would reject the reasonable construction offered by the Commonwealth. The Commonwealth asserts that the statutory language that a judge "may authorize a physician to perform an abortion" upon a finding of maturity can reasonably be interpreted to mean that the judge shall authorize such an abortion except where such an abortion would otherwise be prohibited by law. According to this argument, the Virginia legislature may well have chosen the permissive term "may" because the Virginia statute authorizes the abortion itself, and not merely the minor "to act without parental" consultation as in Bellotti II. Given this, using "shall" rather than "may" would have had the effect of requiring judges to authorize abortions even where they would be affirmatively prohibited by other state abortion laws, such as Virginia's strict regulations on third-trimester abortions. Interestingly, recognition of this kind of problem may have underlay, even if subconsciously, the Supreme Court's own transposition of the terms "may" and "shall" in Casey itself. The Pennsylvania statute there at issue did provide, as plaintiffs contend is constitutionally required here, that if both of the minor's parents refused consent to the abortion, the court "shall" authorize a physician to perform the abortion after a hearing in which it is determined that the minor is mature. Casey, 505 U.S. at 905 (Appendix). Notwithstanding the statute's use of the word "shall," the Court described the bypass provision as if it were (at least according to plaintiffs' arguments) permissive:

> If neither a parent nor a guardian provides consent, a court may authorize the performance of an abortion upon a determination that the young woman is mature and capable of giving informed consent and has in fact given her informed consent.

Id. at 899 (emphasis added). Of course, it need not be decided here that the state's proffered construction is the only reasonable construction, but rather only that the statute is reasonably susceptible of this interpretation. Most certainly it is.

Furthermore, even if the term "may" could only be read as discretion-conferring, that interpretation still would not justify invali-

24

dation of this statute. For the court is presented herein with a facial challenge to a law that had not even become effective when the district court ruled, and even now is but a day old. In this circumstance, considering the particular substantive provision in question, it cannot be said either that there are no circumstances in which the Act would be valid, see Salerno, 482 U.S. 739, or that the provision poses a "substantial obstacle" to the exercise of the abortion right "in a large fraction" of cases, Casey, at 2829. The district court actually never concluded otherwise. Rather, and in error for the reasons explained supra, it simply held that, as a matter of existing constitutional precedent, a notification statute that affords any discretion to judicial officers is per se unconstitutional.

In sum, even if it is possible that the plaintiffs in this action might ultimately prevail on their claim, it simply cannot reasonably be concluded that they are substantially likely to do so.

E.

The district court conclusorily determined also that the balance of harms in this case favored the plaintiffs. This determination rested seemingly exclusively on the court's conclusion that the Act was likely unconstitutional. That is, because the court decided that the statute was unconstitutional, it reasoned that the Commonwealth had no legitimate interest in its enforcement, and that therefore the plaintiffs' interest in the right to abortion was necessarily paramount. Enjoining the Act, the district court reasoned, would only "maintain the status quo." See Memorandum Op. at 6-7. Once it is apparent that plaintiffs cannot show a substantial likelihood of prevailing on the merits of their claims, however, it is apparent that the particular balancing of harms undertaken by the court was necessarily in error. In fact, if anything, the balance tips in favor of the Commonwealth, notwithstanding the fundamental right at issue for the state's minor women. The state not only has an interest in ensuring that the laws enacted by the General Assembly and signed into law by the Governor are implemented, but the state also has a special interest in legislation requiring parental notification of a minor's intention to obtain an abortion, as the Supreme Court has repeatedly recognized. At the very least, these interests must prevail where, as here, its legislation

25

is under facial challenge only and the likelihood that that legislation will ultimately be held unconstitutional is remote.

III.

Because the district court precipitately interposed itself into the democratic processes of the Commonwealth of Virginia, and it did so on the basis of a palpable misunderstanding of the applicable Supreme Court authorities, an immediate stay of that court's injunction against enforcement of the Commonwealth's newly-enacted Parental Notification Act was warranted, and for these reasons did it issue. In this context, the status quo is that which the People have wrought, not that which unaccountable federal judges impose upon them. In the end, if the necessary, but awesome, power of the federal judiciary is to be respected, it must respect the People and their institutions of government -- even in the matters most profound.

IT IS SO ORDERED

Filed: July 3, 1997

26