**PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., Plaintiff,**

v.

**Michael T. DOUGHNEY, Defendant.**

**No. CIV.A. 99–1336–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

June 12, 2000.

David Neil Ventker, Huff, Poole & Mahoney, P.C., Virginia Beach, VA, for People for Ethical Treatment of Animals, Inc., plaintiff.

Richard Taylor Rossier, McLeod, Watkinson & Miller, Washington, DC, for Michael T. Doughney, defendant.

## MEMORANDUM OPINION

HILTON, Chief Judge.

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment and Renewed Motion to Strike, Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment. The parties agree that there are no issues of material fact in dispute and this case may be decided on the motions for summary judgment.

This lawsuit arose from a dispute between Plaintiff, People for the Ethical Treatment of Animals ("PETA"), and Defendant, Michael Doughney ("Doughney"), regarding the use of the internet domain name "PETA.ORG." PETA is a non-profit, charitable corporation established in August 1980. PETA has affiliated animal protection organizations in the United Kingdom, Germany, the Netherlands and India who all operate under the name PETA. On August 4, 1992, PETA was given U.S. Trademark Registration Number 1,705,510 duly issued by the United

States Patent and Trademark Office for the service mark "PETA" for "educational services; namely providing programs and seminars on the subject of animal rights welfare," and, "promoting the public awareness of the need to prevent cruelty and mistreatment of animals." PETA has used the PETA trademark and trade name continuously in interstate commerce and foreign commerce since 1980.

Defendant, Michael Doughney ("Doughney"), registered many domain names in September 1995, including "PETA.ORG." At that time, PETA had no web sites of its own. Doughney registered "PETA.ORG" with Network Solutions, Inc. for "People Eating Tasty Animals" which he represented to Network Solutions, Inc. was a non-profit organization. No such organization was in existence at the time of the registration of the web site or since that time. Doughney also represented to Network Solutions, Inc. that the name "PETA.ORG" "does not interfere with or infringe upon the rights of any third party."

Doughney's "PETA.ORG" web site contained information and materials antithetical to PETA's purpose. When in operation, "www.peta.org" contained the following description of the web site: "A resource for those who enjoy eating meat, wearing fur and leather, hunting, and the fruits of scientific research." There were over thirty links on the web site to commercial sites promoting among other things the sale of leather goods and meats. Until an internet user actually reached the "PETA.ORG" web site, where the screen read "People Eating Tasty Animals," the user had no way of knowing that the "PETA.ORG" web site was not owned, sponsored or endorsed by PETA.

On January 29, 1996, PETA send Doughney a letter requesting that he relinquish his registration of the "PETA.ORG" name because "it uses and infringes upon the longstanding registered service mark of People for the Ethical Treatment of Animals, whose service mark 'PETA' currently is in full force and effect."

PETA then complained to Network Solutions, Inc. and on or about May 2, 1996, Network Solutions, Inc. placed the "PETA.ORG" domain name on "hold" status. Pursuant to Network Solutions, Inc.'s "hold" status designation, the "PETA.ORG" domain name may not be used by any person or entity. After "PETA.ORG" was put on "hold" status, Doughney transferred the contents of that web site to the internet address "www. mtd.com/tasty."

PETA brought this suit alleging claims for service mark infringement in violation of 15 U.S.C. § 1114 (Count I), unfair competition in violation of 15 U.S.C. § 1125(a) and Virginia common law (Counts II and VI), service mark dilution and cybersquatting in violation of 15 U.S.C. § 1125(c)(Count VII). PETA has voluntarily withdrawn Counts III, IV and V of its Amended Complaint. Doughney claims there is no infringement because its web site is a parody. PETA has dropped its claim for damages and seeks the following equitable relief: to enjoin Doughney's unauthorized use of its registered service mark "PETA" in the internet domain name "PETA.ORG," to force Doughney's assignment of the "PETA.ORG" domain name to PETA.

Summary Judgment is appropriate where there is no genuine issue as to any material fact. *See* FED. R. CIV. P. 56(c). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A material fact in dispute appears when its existence or non-existence could lead a jury to different outcomes. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when there is sufficient evidence on

which a reasonable jury could return a verdict in favor of the non-moving party. *See id.* Mere speculation by the non-moving party "cannot create a genuine issue of material fact." *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985); *See also Ash v. United Parcel Serv., Inc.,* 800 F.2d 409, 411–12 (4th Cir.1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the evidence presented must always be taken in the light most favorable to the non-moving party. *See Smith v. Virginia Commonwealth Univ.,* 84 F.3d 672, 675 (4th Cir. 1996)(*en banc* ). This case is ripe for Summary Judgment as all the evidence is before the Court and the facts are undisputed.

■ To make out a case for service or trade mark infringement and/or unfair competition, a Plaintiff must prove the following elements: (1) that Plaintiff possesses a Mark; (2) that Defendant uses the Plaintiff's Mark; (3) that such use occurs in commerce; (4) in connection with the sale or offering for sale, distribution, or advertising of goods or services; and (5) in a way that is likely to cause confusion among consumers. 15 U.S.C. §§ 1114, 1125(a). *Lone Star Steakhouse & Saloon v. Alpha of Virginia,* 43 F.3d 922, 930 (4th Cir.1995).

First, PETA owns the PETA Mark and Defendant admits the PETA Mark's validity and incontestability. The PETA Mark is thus presumed to be distinctive as a matter of law. *Jews for Jesus v. Brodsky,* 993 F.Supp. 282, 295 (D.N.J.1998), *aff'd* 159 F.3d 1351 (3rd Cir.1998); *Sporty's Farm L.L.C. v. Sportsman's Market, Inc.,* 202 F.3d 489, 497(2nd Cir.). Second, Doughney used the identical PETA Mark to register "PETA.ORG" and posting a web site at the internet address "www. peta.org." Third, Doughney admits that his use of the PETA Mark was "in commerce."

■ The fourth element requires that Defendant's use of the PETA Mark be made in connection with the sale, distribution, or advertising of goods or services. This does not require that Defendant actually caused goods or services to be placed into the stream of commerce. *Jews for Jesus,* 993 F.Supp. at 309. The term "services" has been interpreted broadly to include the dissemination of information, including purely ideological information. *United We Stand America, Inc. v. United We Stand America New York,* 128 F.3d 86, 89–90 (2nd Cir.1997) (citations omitted). Defendant's use of the PETA Mark was "in connection" with goods and services because the use of a misleading domain name has been found to be "in connection with the distribution of services" when it impacts on the Plaintiff's business:

> [I]t is likely to prevent Internet users from reaching [PETA]'s own Internet web site. The prospective users of [PETA]'s services who mistakenly access Defendant's web site may fail to continue to search for [PETA]'s own home page, due to anger, frustration, or the belief that the Plaintiff's home page does not exist

*Planned Parenthood Federation of America v. Bucci,* 42 U.S.P.Q.2d 1430, 1435 (S.D.N.Y.); *Jews for Jesus,* 993 F.Supp. at 309. In addition, the "PETA.ORG" web site contained over thirty separate hyperlinks to commercial operations offering goods and services, including fur, leather, magazines, clothing, equipment and guide services. Under the law, even one such link is sufficient to establish the commercial use requirement of the Lanham Act. *Jews for Jesus,* 993 F.Supp. at 308–09; *Planned Parenthood,* 42 U.S.P.Q.2d at 1435.

■ Last, Defendant's use of PETA's Mark did cause confusion. Doughney cop-

ied the Mark identically. This creates a presumption of likelihood of confusion among internet users as a matter of law. *New York State Society of Certified Public Accountants v. Eric Louis Associates, Inc.*, 79 F.Supp.2d 331, 340 (S.D.N.Y.1999). In addition, there was evidence of actual confusion by those using the internet who were trying to locate PETA and instead found Doughney's web site.

■ Doughney's web site certainly dilutes the Mark of PETA. To win on summary judgment for a claim for dilution under 15 U.S.C. § 1125(c)(1), Plaintiff must show that the undisputed facts demonstrate that Defendant's use of "PETA.ORG" diluted the PETA Mark's distinctive quality. Dilution is "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion, mistake or deception." 15 U.S.C. § 1127; *Ringling Bros. v. Utah Division of Travel*, 170 F.3d 449, 452 (4th Cir.1999). Dilution can occur by "tarnishment" or "blurring." *Jews for Jesus*, 993 F.Supp. at 305; *Ringling Bros.*, 170 F.3d at 452.

■ Defendant is guilty of "blurring" the famous PETA Mark because (1) Defendant used the identical PETA Mark to mentally associate PETA.ORG to the PETA Mark; and (2) such use caused; (3) actual economic harm to the PETA Mark by lessening its selling power as an advertising agent for PETA's goods and services. *Ringling Bros.*, 170 F.3d at 458. Doughney's site included materials antithetical to the purpose and message of PETA in that "PETA.ORG" included links to commercial enterprises engaged in conduct directly contrary to PETA's animal protection efforts.

■ PETA is also entitled to Summary Judgment under the Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d)(1)(A). To succeed on Summary Judgment, Plaintiff must show that Defendant (1) has a bad faith intent to profit from using "PETA.ORG;" and (2) the "PETA.ORG" domain name is identical or confusingly similar to, or dilutive of, the distinctive and famous PETA Mark. 15 U.S.C. § 1125(d)(1)(A). The second element has been proved for reasons stated above. As to the first element, under the ACPA, there are nine factors a court must consider in making a determination of whether the Defendant had a bad faith intent. 15 U.S.C. § 1125(d)(1)(B). Applying these factors, it appears that Doughney had the requisite bad faith intent.

First, Defendant possessed no intellectual property rights in "PETA.ORG" when he registered the domain name in 1995. Second, the "PETA.ORG" domain name is not the Defendant, Michael T. Doughney's legal name or any name that is otherwise used to identify the Defendant. Third, Defendant had not engaged in prior use of the "PETA.ORG" domain name in connection with the bona fide offering of any goods or services prior to registering "PETA.ORG." Fourth, Defendant used the PETA Mark in a commercial manner. Fifth, Defendant clearly intended to confuse, mislead and divert internet users into accessing his web site which contained information antithetical and therefore harmful to the goodwill represented by the PETA Mark. Sixth, on Doughney's "PETA.ORG" web site, Doughney made reference to seeing what PETA would offer him if PETA did not like his web site. Seventh, Defendant, when registering the domain name "PETA.ORG," falsely stated that "People Eating Tasty Animals" was a non-profit educational organization and that this web site did not infringe any trade mark. Eighth, Defendant has registered other internet domain names which are identical or similar to either marks or names of famous people or organizations he opposes. Ninth, the PETA Mark used in the "PETA.ORG" domain name is distinctive and famous and was so at the time

Defendant registered this site in September 1995.

Doughney contends there is no infringement in that his web site was a parody. A parody exists when two antithetical ideas appear at the same time. In this instance, an internet user would not realize that they were not on an official PETA web site until after they had used PETA's Mark to access the web page "www.peta.org." Only then would they find Doughney's People Eating Tasty Animals. Doughney knew he was causing confusion by use of the Mark and admitted that it was "possible" that some internet users would be confused when they activated "PETA.ORG" and found the "People Eating Tasty Animals" web site. He also admitted that "many people" would initially assume that they were accessing an authentic PETA web site at "www.peta.org." Only after arriving at the "PETA.ORG" web site could the web site browser determine that this was not a web site owned, controlled or sponsored by PETA. Therefore, the two images: (1) the famous PETA name and (2) the "People Eating Tasty Animals" web site was not a parody because not simultaneous.

The Defendant's affirmative defense of trademark misuse is inapplicable. In 1998, PETA registered the domain names "ringlingbrothers.com," "voguemagazine.com," and "pg.info." Each web site contained messages from PETA criticizing Ringling Bros.-Barnum & Bailey Combined, Vogue Magazine and Procter & Gamble Company for mistreatment of animals. In each instance, "ringlingbrothers," "voguemagazine" and "pginfo" were not and are not registered trademarks. PETA received complaints from Conde Nast Publications that owns Vogue Magazine and from the Ringling Bros.-Barnum & Bailey Combined Shows regarding PETA's web sites bearing their names. In each case, PETA voluntarily and immediately assigned the domain names to the complaining party. At no time did PETA receive any correspondence of any kind

from Procter & Gamble Company complaining about PETA's registration and use of the internet domain name "pginfo.net." Doughney had no relation to any of these web sites and suffered no damages from PETA's operation of any of these web sites.

Defendant's affirmative defense is based in part on a constitutional argument. Doughney contends that this case is an attempt to quash his First Amendment rights to express disagreement with their organization. PETA does not seek to keep Doughney from criticizing PETA. They ask that Doughney not use their mark. When Network Solutions, Inc. placed "PETA.ORG" on "hold" status, Doughney transferred the entire web page to one of his other internet sites, "mtd.com/tasty." PETA has not complained about that web site and even concedes that Doughney has a right to criticize PETA or any organization.

Defendant also raises as a his trademark misuse affirmative defense an "unclean hands" argument. However, the doctrine of unclean hands applies only with respect to the right in suit. What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the right he now asserts. *Estee Lauder, Inc. v. Fragrance Counter*, 189 F.R.D. 269, 272 (S.D.N.Y.1999); *see also Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). The purported grounds for Defendant's "unclean hands"—i.e. PETA's disputes with Ringling Bros. and Vogue, and PETA's web site that is critical of Procter & Gamble—are not at issue in this suit and thus, are not properly the subject of an unclean hands defense.

As PETA has proven its case for its infringement and dilution claims and Doughney can offer no viable defenses to PETA's claims, Summary Judgment should be granted in favor of PETA.

An appropriate Order shall issue.

## ORDER

For reasons stated in accompanying Memorandum Opinion, it is hereby

ORDERED that Plaintiff's Motion for Summary Judgment is GRANTED, that the Defendant's Motion for Summary Judgment is DENIED and that Defendant is ORDERED to relinquish the registration of the domain name PETA.ORG; to transfer its registration of such domain name to PETA; and to limit his use of a domain name to those that do not use PETA's marks and/or any colorable imitation of such marks, or any thing or mark confusingly similar thereto.