67 F.3d 295
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
KOREAN VIDEO BROADCASTING CORPORATION, Plaintiff-Appellee,
v.
D & H VISUAL ART, INCORPORATED; Oh Duk Kwon, Defendants-Appellants.
 No. 94-2556.
 United States Court of Appeals, Fourth Circuit.
 Sept. 13, 1995.
 
 Tobey B. Marzouk, Thomas M. Parry, MARZOUK & PARRY, Washington, D.C., for Appellants.
 Peter Skoro, Fairfax, Virginia, for Appellee.
 Before WILKINS and MOTZ, Circuit Judges, and PHILLIPS, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Appellants, Oh Duk Kwon and D & H Visual Art ("D & H"), appeal from the jury's verdict in this diversity action finding them liable for breach of contract and conspiracy, and from the district court's order denying their subsequent Fed.R.Civ.P. 50(b) motion for judgment as a matter of law or in the alternative for a new trial. Finding no reversible error, we affirm.
 
 
 2
 * Kwon is a New Jersey resident and the sole owner of D & H, a New York corporation. D & H owned the rights to distribute in the eastern United States video tapes produced by two Korean broadcasting corporations--Munhwa Broadcasting Corporation ("MBC") and Korean Broadcasting Systems ("KBS"). Prior to September 1993, Virginia retailers were supplied with MBC and KBS tapes by Young Min Ro through a contract with D & H. Maryland retailers were supplied tapes by Duk Kyun through a similar contract with D & H.
 
 
 3
 In 1991, David Chu formed the Korean Video Broadcasting Corporation ("KVBC") for the purpose of distributing MBC's video tapes in the United States. Because MBC was already contracting for video tape distribution with D & H, KVBC's right to distribute was postponed. In August 1993, the president of MBC encouraged Kwon to negotiate a distribution agreement with KVBC. Kwon met with Chu and the two eventually signed a contract giving KVBC the right to distribute MBC video tapes in Virginia beginning in September 1993 and ending in August 1994. Because of KVBC's contract, Ro lost the right to distribute MBC tapes in Virginia.
 
 
 4
 Kwon subsequently met with Ro and the two discussed what could be done to regain Ro's former MBC territory in Virginia. Kwon's office manager contacted Kyun and directed Kyun to meet with Ro and put together a newspaper advertisement expressing the retailers' displeasure with KVBC's acquisition of distribution rights in Virginia and calling for a boycott. Kyun and Ro met with two other video retailers and agreed to place such an advertisement in a Korean-language newspaper. Kyun later met with Kwon at National Airport in Virginia. They drove to Maryland and Kwon told Kyun that he was forced to contract with Chu and KVBC, but that he was holding the Virginia territory for Ro. Kwon and Kyun discussed means to get rid of Chu and KVBC. Kwon suggested that they continue to make trouble for Chu so the retailers would think KVBC could not handle distribution. In furtherance of this plan, Kwon told Kyun that he would deliver MBC tapes to Kyun daily, but that he would deliver the same tapes to Chu weekly. Word would then spread that Chu was slow with distribution. Kwon also supported the placing of an advertisement calling for a boycott of MBC tapes distributed through KVBC, and he encouraged Kyun to pay for one-half of the advertisement.
 
 
 5
 The day that the advertisement appeared in the newspaper, Kwon called Chu to find out what was going on. Kwon told Chu that in accordance with the contract, KVBC had to straighten out any problems with the retailers within ten days or the contract would be canceled. Chu visited all twenty-three retailers and received assurances from twenty of them that they would not boycott MBC video tapes. Chu sent documentation of these assurances to D & H. Chu testified that he then began to receive low quality tapes from D & H that could not be distributed. Shortly thereafter, Chu stopped receiving video tapes entirely. He then discovered that D & H had terminated the contract and reentered into a contract with Ro. This lawsuit followed.
 
 II
 
 6
 Kwon contends that the district court erred in finding that it had personal jurisdiction over him. A federal court sitting in diversity has personal jurisdiction over a nonresident defendant if: (i) an applicable long-arm statute confers jurisdiction, and (ii) the assertion of that jurisdiction is consistent with constitutional due process. Ellicott Mach. Corp. v. John Holland Party, Ltd., 995 F.2d 474, 477 (4th Cir.1993). The long-arm statute at issue provides in relevant part that Virginia courts may exercise personal jurisdiction over:
 
 
 7
 a person, who acts directly or by an agent, as to a cause of action arising from the person's:
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 3. Causing tortious injury by an act or omission in this Commonwealth;
 
 
 11
 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth.
 
 
 12
 Va.Code Ann. Sec. 8.01-328.1(A) (Michie 1992). Virginia's long-arm statute extends jurisdiction to the full extent permitted by the Due Process Clause. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir.1990).
 
 
 13
 Jurisdiction over Kwon individually was appropriate under the long-arm statute because of Kwon's tortious conduct of conspiring with Kyun to derail KVBC's attempts to perform its obligations under the contract. Even if Kwon never entered Virginia, jurisdiction was appropriate under the long-arm statute because Kwon regularly distributed video tapes in Virginia and derived a substantial source of revenue from their sale in Virginia. The district court's findings that Kwon caused tortious injury against KVBC in Virginia by his conduct outside of the state in attempting to interfere with KVBC's performance under the contract were not clearly erroneous.
 
 
 14
 Kwon argues that he should not be subject to jurisdiction because he was protected by the fiduciary shield doctrine. Under this doctrine, " 'the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity.' " Columbia Briargate Co. v. First National Bank, 713 F.2d 1052, 1055-56 (4th Cir.1983) (quoting Bulova Watch Co. v. K. Hattori & Co., 508 F.Supp. 1322, 1347 (E.D.N.Y.1981)), cert. denied, 465 U.S. 1007 (1984). Kwon's reliance on this doctrine is misplaced. In Columbia Briargate we made clear that the fiduciary shield doctrine does not apply to protect a corporate agent where, as here, jurisdiction is asserted under a long-arm statute that extends its reach to the limits of the Due Process Clause. We accordingly reject Kwon's argument.
 
 
 15
 Having determined that the Virginia statute would confer jurisdiction over Kwon, we must decide whether exercise of that jurisdiction violated due process. We conclude that it did not. The district court's assumption of jurisdiction could not violate due process if Kwon had enough "minimum contacts" with Virginia that requiring him to defend his interests there did not "offend 'traditional notions of fair play and substantial justice.' " International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). These minimum contacts must be found in conduct of the defendant by which he "purposefully avails[himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985).
 
 
 16
 While Kwon goes to great lengths on appeal to stress the lack of physical contacts he had with Virginia, the Supreme Court has made clear that lack of physical contacts is not dispositive. Instead, because the existence of jurisdiction is based upon traditional notions of fairness, the Supreme Court has determined that:
 
 
 17
 [w]here a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, this "fair warning" requirement is satisfied if the defendant has "purposefully directed" his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities.
 
 
 18
 Burger King, 471 U.S. at 472 (citations omitted) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). This standard is satisfied here because KVBC's allegations of injury arose wholly from Kwon's activities that were purposefully directed at residents of Virginia. The district court, therefore, properly assumed personal jurisdiction over Kwon.
 
 III
 
 19
 Kwon argues that the evidence was insufficient to establish his personal participation in a conspiracy[1] and that the district court erred in denying his motion for judgment as a matter of law. We review a denial of a Rule 50(b) motion for judgment as a matter of law to determine whether a reasonable jury, based upon the evidence presented, could have found the verdict. Trimed, Inc. v. Sherwood Medical Co., 977 F.2d 885, 888 (4th Cir.1992). KVBC presented evidence showing that Kwon considered himself forced by MBC into a contract with KVBC and he actively solicited assistance from Kyun and Ro to impede KVBC's ability to perform the contract. This evidence supports the jury's verdict. While Kwon argues that this evidence of his involvement was not credible, we will not reweigh the evidence or judge credibility. See GSM Dealer Servs. v. Chrysler Corp., 32 F.3d 139, 142 (4th Cir.1994).
 
 
 20
 Kwon argues alternatively that even if he did participate in an agreement to injure KVBC's reputation or business, he did not do so maliciously as required by the statute. As pointed out by KVBC, and contrary to Kwon's contention, a showing of actual malice is not required to establish a violation of Sec. 18.2-499(a). See Commercial Business Sys. v. Bellsouth Servs., 453 S.E.2d 261, 267 (Va.1995). Rather, the Virginia Supreme Court requires proof of legal malice which is met by evidence that Kwon acted intentionally, purposely, and without lawful justification. Id. at 266-67. A reasonable jury could have found that KVBC presented clear and convincing evidence that Kwon acted with legal malice.
 
 
 21
 We therefore affirm the judgment in all respects.[2] We dispense with oral argument based on our prior order granting the motion to submit the cases on briefs.
 
 AFFIRMED
 
 
 [1]
 The Virginia Code defines conspiracy to injure a business as, "two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of [ ] willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever." Va.Code Ann. Sec. 18.2-499(a) (Michie Supp.1995). Any person injured in his reputation, business, or trade by such a conspiracy may file suit and recover treble damages and costs. Va.Code Ann. Sec. 18.2-500(a) (Michie 1988)
 
 
 [2]
 Kwon also argues that the district court abused its discretion by not striking from the record a question KVBC's counsel asked of Kwon regarding Kwon's smoking habits. We reject this argument as frivolous