DOVE AIR, INC., a North Carolina Business Corporation; and Joe Duncan, Plaintiffs,

v.

William G. BENNETT; "Augusta Packing, L.L.C."; Silver State Aviation, Inc., a Nevada Business Corporation; and Helldiver Aviation, L.L.C., a Nevada Limited Liability Company, Defendants.

No. CIV. 1:02CV96.

United States District Court,
W.D. North Carolina,
Asheville Division.

Oct. 1, 2002.

Chester M. Jones, Jones, Key, Melvin & Patton, Franklin, NC, Dana Kirk, Kirk Law Firm, Houston, TX, for plaintiffs.

Marjorie Rowe Mann, Roberts & Stevens, P.A., Asheville, NC, for defendants.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiffs' objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr.

Pursuant to standing orders of designation and 28 U.S.C. § 636, this Court referred the Defendants' motions to dismiss to the Magistrate Judge for a recommendation as to disposition. Plaintiffs object to the Magistrate Judge's *sua sponte* recommendation that the action be transferred to the United States District Court for the District of Nevada.

The district court conducts a *de novo* review of those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. *See* 28 U.S.C. § 636(b). Those parts to which no specific objections are filed are given careful review. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir.1982).

## I. FACTUAL BACKGROUND

On April 25, 2002, the Defendants removed this action from the General Court of Justice, Superior Court Division of Buncombe County, North Carolina, on the basis of diversity jurisdiction.[1] In the state court complaint, Plaintiffs alleged claims for breach of contract, breach of fiduciary duties, and unfair and deceptive trade practices against the Defendants. The parties' disputes stem from a joint venture beginning in 1996 which was designed to use the knowledge, skill and reputation of Plaintiff Joe Duncan "to acquire and sell aircraft to be owned by Augusta [Packing, LLC] for profit." Exhibit 1, Joint Venture Agreement, dated April 1, 1996, *attached to* Complaint, at 1.

Among the provisions of the agreement is an acknowledgment that Duncan, acting through Dove Air, Inc. (Dove) "shall use [his] skill, knowledge and expertise in the aircraft market to locate, identify and negotiate the purchase and sale of various aircraft on behalf of Augusta. Aircraft purchased by Augusta which were presented by Dove are subject to the allocation of profits and losses set forth below." *Id.,* at 2. Dove was to pay Augusta eight percent interest on capital invested by Augusta in any aircraft which did not sell within 30 days of purchase. Although profits were to be divided equally within 30 days of the resale of aircraft, Augusta could deduct from the Plaintiffs' profits the eight percent interest accrued. *Id.,* at 3. The agreement also contained the following provision:

> The Agreement shall be governed by the laws of the State of Nevada. Any action to enforce any rights under this Agreement or in any way pertaining to this Agreement or the relationship created by this Agreement shall be subject to

---

1. The Notice of Removal contains language indicating that an additional basis for removal is the pendency of a bankruptcy proceeding. Notice of Removal, filed April 25, 2002, at Section I. However, there is no mention of bankruptcy in either the remainder of the Notice or the Complaint and it appears this language is merely surplus which was mistakenly left on a form Notice of Removal.

the exclusive jurisdiction of the Eighth Judicial District Court of the State of Nevada located in Clark County, Nevada.

*Id.*, at 7.

## II. DISCUSSION

After removing the case from state court, Defendants moved to dismiss the action for (1) lack of subject matter jurisdiction; (2) lack of personal jurisdiction; (3) improper venue; and (4) failure to state a claim. Based on the above provision in the agreement, the Magistrate Judge *sua sponte* found the action should be transferred to the federal court in Nevada. Plaintiffs object both to the finding that the above constitutes a forum selection clause which is binding on the parties and to the *sua sponte* raising of the issue of transfer.

As an initial matter, it is noted that the action was removed from state court based on diversity jurisdiction. 28 U.S.C. § 1441(a) ("[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States . . . ."). Defendants now attack this Court's subject matter jurisdiction. The federal removal statutes also provide that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, *the case shall be remanded.*" 28 U.S.C. § 1447(c) (emphasis added). If the Defendants are indeed correct that there is no subject matter jurisdiction, the undersigned is compelled to remand the case to state court and has no authority to dismiss or transfer the action. "The plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject matter jurisdiction." *Roach v. West Virginia Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir.1996) (citations omitted). Thus, whatever disposition is made of this action based on these motions, it may not be dismissal or . transferred.

Plaintiffs' first objection is to the Magistrate Judge's exclusion from consideration of matters outside the pleadings which they submitted in opposition to the motion to dismiss for lack of subject matter jurisdiction. *See, e.g.,* Memorandum and Recommendation, filed July 26, 2002, at 2 ("The court . . . has disregarded those submissions."). Plaintiffs are correct; indeed, the Magistrate Judge also noted that matters outside the pleadings may be considered on a motion pursuant to Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction. *Id.*, at n. 2 (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). Thus, those matters will be considered by the undersigned in ruling on the Plaintiffs' objections.

Plaintiffs' next objection is to the Magistrate Judge's recommendation that the forum selection clause,[2] quoted above, be enforced by transferring this action to the United States District Court for the District of Nevada.[3] The Supreme Court has consistently given presumptive validity

---

**2.** Although the parties refer to this provision as a forum selection clause, the language also contains a choice of law provision. "[A] choice of law provision [ ] names a particular state and provides that the substantive laws of that jurisdiction will be used to determine the validity and construction of the contract . . . ." *Mark Group Int'l, Inc. v. Still,* —— N.C.App. ——, 566 S.E.2d 160, 161 (2002). "[A] forum

selection provision [ ] goes one step further . . . by designating a particular state or court as the jurisdiction in which the parties will litigate disputes arising out of the contract and their contractual relationship." *Id.*

**3.** The Magistrate Judge did inherently recognize that the clause itself requires prosecution

to such clauses when made in arms-length transactions absent a compelling reason to do otherwise.[4] *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). And, the Fourth Circuit has recently reiterated that "absent a showing that the chosen forum is unreasonable or was imposed by fraud or unequal bargaining power, the parties' choice should be enforced." *Vulcan Chem. Tech., Inc. v. Barker*, 297 F.3d 332, 339 (4th Cir.2002) (citing *Bremen*, 407 U.S. at 10, 92 S.Ct. 1907).

> Choice of forum and law provisions may be found unreasonable if (1) their formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir.1996) (quoting *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)).

In the complaint, it is alleged that Plaintiff Duncan was a small aircraft dealer in North Carolina in the fall of 1995 when he was contacted by Defendant Bennett, who is described as a wealthy owner and manager of hotel and casino businesses in Las Vegas, Nevada. Complaint, at 2. Duncan was experiencing severe financial problems at the time, a condition of which Bennett was aware. *Id.* At Bennett's solicitation, Duncan went to his Las Vegas casino at which time Bennett gave Duncan an opportunity to sell four aircraft under an exclusive brokerage agreement. *Id.* Pleased with Duncan's success in that venture, Bennett then approached Duncan about a joint venture; however, as a prerequisite to such a venture, Duncan was required to discontinue his business relationship with his associate at the time and to agree that Bennett would have complete control over the venture. *Id.*, at 3. Duncan, who was then 65 years old, alleges that due to his severe financial problems, he was forced to comply with these demands. *Id.* The joint venture agreement was prepared at Bennett's direction by his employees. *Id.*

In opposition to the motion to dismiss, Plaintiff Duncan also filed an affidavit in which he averred that although he signed the joint venture agreement in Nevada, he brought the document back to North Carolina for his wife's signature as the President of his company, Plaintiff Dove Air. Exhibit A, Affidavit of Joe Duncan, *attached to* Plaintiffs' Brief in Opposition to Motion to Dismiss [Plaintiffs' Brief], filed July 17, 2002, at 2. Duncan's wife has also filed an affidavit attesting to the fact that she signed the agreement in North Carolina. Exhibit B, Affidavit of Bonnie Duncan, *attached to* Plaintiffs' Brief. Duncan also avers that although the agreement

---

only in a state court in Nevada. Memorandum and Recommendation, *supra*, at 10.

4. Once a case has been removed to federal court, federal law governs procedural matters. *Granny Goose Foods, Inc. v. Local No. 70, Int'l Bhd. of Teamsters*, 415 U.S. 423, 438, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). Forum selection is a procedural right. *Gilmer v. Interstate/Johnson Lane Corp.*, 895 F.2d 195, 198 (4th Cir.1990). "The majority of courts addressing motions to dismiss based on forum selection clauses apply federal law, ... as opposed to state law, to the question of the enforceability of the clause." 17 *Moore's Federal Practice*, § 111.04[3][c] (3d ed.). Assuming *arguendo* that the choice of law provision is enforceable, there is no distinction between federal and Nevada law on this issue. *See, Tandy Computer Leasing v. Terina's Pizza, Inc.*, 105 Nev. 841, 784 P.2d 7 (1989). North Carolina law will be discussed *infra*.

refers to Augusta Packing as the entity which would purchase the aircraft, there was no such legal entity and no aircraft were ever purchased by Augusta Packing. Joe Duncan Affidavit, supra. In fact, 17 planes were purchased by Silver State Aviation, Inc., through the efforts of Plaintiff Duncan. *Id.*

In addition to those planes, Duncan located and negotiated for the purchase of planes for the personal use of Bennett and his associates. Complaint, at 6. At Bennett's insistence, a "running account" was kept by Bennett's employees of the funds due to Duncan. *Id.*, at 6–7. However, Duncan was not paid in excess of $1 million which is owed to him. *Id.*

The language of the agreement supports Plaintiffs' arguments of overreaching. Augusta had the sole authority to accept or reject any purchase or sale negotiated by Duncan, who had no authority to bind Augusta in any manner. Joint Venture Agreement, at Section Four. While operating costs were to be reimbursable to both parties, Dove Air could only obtain reimbursement for costs approved in advance by Augusta. *Id.*, at Section Five. The accounting of Dove Air's profits, losses and operating costs was to be done by Augusta. *Id.*, at Section Eight. And, while Dove Air was to indemnify Augusta for any negligence, a reciprocal agreement was not in place. *Id.*, at Section Ten. Likewise, Dove Air and Duncan were prohibited from competing with Augusta for one year after the termination of the joint venture; however, "[n]othing contained herein shall be construed to prohibit Augusta from transacting any business with any third parties, and Dove and Joe Duncan shall have no right to share any profits in any such transaction." *Id.*, at Section Eleven. Finally, although Duncan was ob-

ligated to personally guarantee the obligations of Dove Air arising from the agreement, a reciprocal provision was not included for Augusta and Bennett. *Id.*, at Section Thirteen.

Duncan claims that at the time he signed the agreement, he was in desperate financial condition and that Bennett insisted both on the agreement and ultimate control over the venture. These allegations and the provisions of the agreement itself show unequal bargaining power and overreaching. *See, e.g., Cox v. Dine–A–Mate, Inc.,* 129 N.C.App. 773, 776, 501 S.E.2d 353, 355 (1998). In fact, it appears there was no bargaining at all, but merely the presentation to Duncan of the agreement which he had to sign in order to do business with Bennett. *Bell Atlantic Tricon Leasing Corp. v. Johnnie's Garbage Serv., Inc.,* 113 N.C.App. 476, 480–81, 439 S.E.2d 221, 224 (1994) ("There was no bargaining over the terms of the contract between the parties, who were far from equal in bargaining power."). Considering all the circumstances surrounding this agreement, the undersigned finds that enforcement of the choice of law and forum selection provisions would be unreasonable and that compelling reasons have been shown against enforcement. *Id.; Security Credit Leasing, Inc. v. D.J.'s of Salisbury, Inc.,* 140 N.C.App. 521, 529, 537 S.E.2d 227, 232 (2000).

■ Additionally, in 1993, the North Carolina legislature enacted a statute expressing its concern about forum selection clauses. N.C. Gen.Stat. § 22B–3 ("[A]ny provision in a contract entered into in North Carolina that requires the prosecution of any action ... that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable.").[5] Thus, if the joint

---

5. Defendant Bennett provided the affidavit of his former corporate counsel, John McManus, in which he stated, "I recall that Joe Duncan

and his wife, Bonnie Duncan, signed that agreement in my presence in my office in Las

venture was entered into in North Carolina, this statute would apply to void the forum selection provision. A contract is entered into or made in North Carolina if the last act necessary to make it binding occurs within the state. *Fortune Insurance Co. v. Owens*, 351 N.C. 424, 526 S.E.2d 463 (2000). Ordinarily, in order to make this determination, it would be necessary to review the conflicting affidavits. However, the law is also clear that if the enforcement of the clause would contravene strong public policy, this is another basis on which it may be found to be unreasonable. *Allen, supra.* Thus, the undersigned finds that the forum selection clause is also unreasonable pursuant to the State's public policy as expressed in N.C. Gen.Stat. § 22B–3.

■ In addition to the motion to dismiss for lack of subject matter jurisdiction, the Defendants also moved to dismiss for lack of personal jurisdiction claiming that due process would be violated if North Carolina's long-arm statute were applied to exercise jurisdiction. In ruling on a motion to dismiss for lack of personal jurisdiction, "the plaintiff need prove only a prima facie case of personal jurisdiction. In deciding whether the plaintiff has proved a prima facie case of personal jurisdiction, the district court must draw all reasonable inferences arising from the proof, and resolve all factual disputes, in the plaintiff's favor." *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir.1993) (citations omitted); *accord, United States v. Ziegler Bolt & Parts Co.*, 111 F.3d 878, 880 (Fed.Cir.1997).

[I]n order for a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements. The North Carolina long-arm statute provides, *inter alia*, for jurisdiction over any validly-served defendant, who "is engaged in substantial activity within [North Carolina]" [ ][,] whose act or omission gave rise to an action claiming injury to person or property in North Carolina or who authorized or ratified the performance of services for the defendant by the plaintiff within [North Carolina]. Like those of many other states, North Carolina's long-arm statute is construed to extend jurisdiction over nonresident defendants to the fullest extent permitted by the Due Process Clause. Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such minimal contacts with the forum state that maintenance of the suit does not offend traditional notions of fair play and substantial justice.

*Christian Science Bd. of Directors, First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir.2001) (citations omitted).

Defendants concede the "general allegations in this case that [Dove Air] suffered financial damages in North Carolina as a result of the alleged actions of the Defendant, Augusta Packing, are sufficient to satisfy the first prong of the statute." Defendants' Memorandum in Support of Mo-

---

Vegas, Nevada in late March 1996." Exhibit 2, Affidavit of John M. McManus, *attached to* Defendants' Motion to Dismiss. By contrast, Plaintiff Duncan averred unequivocally that he signed the agreement in Nevada and then took it back to North Carolina for his wife's signature. Affidavit of Joe Duncan, supra.

Mrs. Duncan averred that "To the best of my recollection, I signed the [agreement] in Buncombe County ...." Affidavit of Bonnie Duncan, *supra.* The agreement is silent on this point, containing no date next to the signatures which were not notarized or witnessed.

tion to Dismiss, filed May 30, 2002, at 9. However, as to the remaining Defendants, they argue there are insufficient contacts to satisfy due process.[6] *Id.* As a result, the facts alleged by the Plaintiffs will be reviewed.

Plaintiff Duncan alleges that Augusta Packing was never legally formed and the parties instead used Silver State Aviation, Inc. (Silver State) and HellDiver Aviation as the mechanisms for the purchase and resale of aircraft. Joe Duncan Affidavit, at 2. He identifies 17 aircraft purchased and sold through those entities. *Id.,* at 2–3. Most of them were stored in hanger space at the Asheville, North Carolina, Airport at some point during negotiations, maintenance, repair, refurbishing, purchase and/or resale. *Id.,* at 4. "William G. Bennett and Silver State Aviation, Inc. wanted that portion of the [ ] aircraft that needed to be stored kept in a hanger." *Id.* In addition, Duncan "purchased large quantities of jet fuel from Asheville Jet, in Asheville, North Carolina, for the purpose of being able to move such aircraft around for showing, repair, maintenance and refurbishment, and storage in Asheville, North Carolina." *Id.,* at 3.

Attached to Plaintiff Duncan's affidavit is an Appendix of Exhibits showing that in 1996, Dove Air paid over $17,000 in fuel bills and hanger rental and in 1997, the amount approached $5,000. Exhibits 1–16 of Appendix, *attached to* Joe Duncan Affidavit. The hanger rental was $650 per month until 1999 when it was increased to $700 per month. *Id.,* at Exhibit 53. In addition, invoices are included for fuel bought for the specific aircraft purchased and sold by the joint venture. *Id.,* at Exhibits 17–24 (totaling approximately

$5,000). Other invoices show repairs and maintenance charges for specific aircraft. *Id.,* at Exhibits 37, 41–48. "[Telephone] calls received by Dove Air, Inc. and Joe Duncan in North Carolina regarding such aircraft are literally in the hundreds if not thousands. The calls made by Dove Air, Inc. and Joe Duncan regarding such aircraft are literally in the hundreds if not thousands." Duncan Affidavit, at 4. "Hundreds of calls were made by Dove Air, Inc. to William Bennett and Silver State Aviation, Inc." *Id.,* at 5. These calls were made from North Carolina. And, Bennett and Silver State likewise made "hundreds" of such calls to Duncan in North Carolina. *Id.* Duncan alleges that the phone bills showing these calls are eight inches thick. *Id.*

Duncan has included in the Appendix copies of facsimiles and letters on Silver State's letterhead which were received in North Carolina from John McManus, the corporate attorney for Bennett, as well as from other Silver State employees.[7] Exhibits 69–71, 107–113, 118, 120–121, 168–174, 215–225, 227, 265–272, 289–299, 301, 432–436, 439–449, 503–506, 508–513, 518–530, 577–588, 595–600, 650–652, 658, 774–778, 780, 784–787, 880, 892–911, 913–938, 1008, 1010–1011. Also included are letters on Bennett's personal letterhead which were sent to Duncan in North Carolina. Exhibits 122–23, 287, 438, 912, 1005, 1009. And, the documents contain facsimiles from Duncan in North Carolina directly to Bennett in Nevada. Exhibits 105–106, 300, 507–514, 601, 939, 941–943, 1013–1015. Copies of facsimiles used to negotiate the purchase and sale of the specified aircraft are also included in the Appendix. These documents show facsimiles sent by Plain-

---

6. The concession is not surprising in view of the Plaintiffs' allegations that "there has not in fact been a legal entity by the name of 'Augusta Packing, L.L.C.'" formed. Joe Duncan Affidavit, at 2.

7. Many of these copies are also on the letterhead of the Sahara Hotel and Casino which is owned by Defendant Bennett.

tiffs from North Carolina and responses or communications sent from Maryland, Kentucky, Kansas, New York, Wisconsin, Ohio, Oklahoma, British Columbia, Texas, Arizona, South Carolina, New Jersey, Utah, Arkansas, Tennessee, California, Connecticut, Florida, Pennsylvania, Massachusetts, South Africa, Alberta, England, Italy and Brazil, all related to negotiations for the purchase and/or sale, maintenance, repair or refurbishment of the various aircraft. Exhibits 72–104, 128–31, 134–38, 139–167, 178–214, 226, 228–264, 273–286, 315–431, 450–502, 531–576, 589–594, 600–649, 653–657, 659–773, 779, 781–783, 788–878, 881–889, 940, 944–994, 998–1007, 1016–1018.[8] Some of these repairs were performed in North Carolina; others were performed out of state and required the relocation of the aircraft from the Asheville hanger to the point of repair. *Id.* At least one of these aircraft was sold to a North Carolina purchaser. *Id.,* Exhibits 645–649. In connection with the sale of the Saber 105 CM aircraft, Bennett sent a flight crew to North Carolina to take possession of the plane. Duncan Affidavit, at 14. Many of these documents are estimates or bills for repair of the aircraft which were later resold at a profit; and, those documents are frequently addressed to Silver State Aviation at the North Carolina address for Dove Air. Exhibits, *supra.* One sale negotiated by Duncan in 1999 resulted in the purchase through Silver State of an aircraft for almost $17 million. *Id.,* at Exhibits 969–972. When title examinations were performed for an aircraft to be purchased and when deposits in escrow were made, the examiner frequently sent copies of the report to both Duncan and McManus. *See, e.g.,* Exhibits 644, 879, 890–891, 995–997. Finally, numerous checks written on Silver State's checking account and wire transfers directly from Bennett's personal

accounts were sent to Dove Air. Exhibits 1008, 1012, 1018.

Defendants, however, maintain that none of them has never personally conducted business in North Carolina and the services which were performed here by the Plaintiffs were not solicited by them. This argument belies the whole purpose behind the joint venture as stated in the agreement itself: Duncan, acting through Dove Air, Inc. (Dove) "shall use [his] skill, knowledge and expertise in the aircraft market to locate, identify and negotiate the purchase and sale of various aircraft on behalf of Augusta." Joint Venture Agreement, *supra.* And, the Agreement clearly notes Duncan's North Carolina residence. *Id.*

"When the cause of action arises out of the defendant's contacts with the forum, a court may seek to exercise specific jurisdiction. However, when the cause of action does not arise out of the defendant's contacts with the forum, general jurisdiction may be exercised upon a showing that the defendant's contacts are of a continuous and systematic nature." *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory,"* 283 F.3d 208, 213 (4th Cir.2002) (citations omitted). Here, the Defendants took direct action to create a connection with North Carolina; first, by enlisting Duncan to enter into an exclusive brokerage agreement, and second, by enlisting him to enter into the joint venture agreement. *Bd. of Directors, First Church of Christ,* 259 F.3d at 216. Subsequently, the Defendants consistently sent information, including solicitations and directions for conduct which they knew would be performed from North Carolina. *Id.* Assuming *arguendo* that the Defendants never left Nevada, they specifically instructed Duncan to use his knowledge and expertise in the aviation industry to

---

**8.** Included in these Exhibits are facsimiles from Duncan to McManus.

locate, negotiate, contract, purchase, repair, refurbish, maintain and/or resale aircraft. *Christian Sci. Bd. of Directors, First Church of Christ, Scientist v. Robinson*, 123 F.Supp.2d 965, 972 (W.D.N.C. 2000), *aff'd*, 259 F.3d 209 (4th Cir.2001). "Defendants' conduct constituted the solicitation or provision of services under ... North Carolina law." *Id.* Such conduct clearly can occur *via* telephone conversations, e-mails, facsimiles, *etc. Id.*, at 973. "[Defendants'] connection to North Carolina was by no means fortuitous or unwitting. Rather, [they] deliberately entered a collaborative enterprise with [Plaintiffs], well aware that any [action taken by them] would be physically [performed] by a North Carolina resident working ... in North Carolina." *Bd. of Directors, First Church of Christ*, 259 F.3d at 217. "Specific jurisdiction exists if the defendant has purposefully directed its activities towards the resident of the forum and the cause of action relates to such activities." *Wyatt v. Walt Disney World Co.*, 151 N.C.App. 158, 565 S.E.2d 705, 710 (2002).

Moreover, based on the documentary evidence discussed *infra*, the undersigned finds that the Defendants' contacts with North Carolina were "continuous and systematic" in nature, thus establishing general jurisdiction. *Base Metal Trading, supra.*

> Plaintiff[s'] unchallenged showing include[s] the following: (1) [Defendants] solicited [Plaintiffs] to [perform services] in North Carolina; (2) [Plaintiffs'] performed the contracted services on behalf of [the Defendants] in North Carolina; (3) [Defendants] forwarded certain payment to North Carolina for [Plaintiffs'] services, but defaulted on the full contractual amount; and (4) [Plaintiffs] [were] injured by [Defendants'] default. Plaintiff[s] thus *prima facie* satisfied the requirements of G.S. § 1–75.4(4)(a) for personal jurisdiction over [Defendants].

*Inspirational Network, Inc. v. Combs*, 131 N.C.App. 231, 237, 506 S.E.2d 754, 759 (1998).

Having concluded then that the Defendants purposefully availed themselves of the privilege of conducting business activities in North Carolina and that the Plaintiffs' claims arise from those activities, the only factor left for consideration is the reasonableness of exercising jurisdiction over these out-of-state Defendants. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

> In determining whether jurisdiction is constitutionally reasonable, we may evaluate "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." More generally, our reasonableness analysis is designed to ensure that jurisdictional rules are not exploited "in such a way as to make litigation 'so gravely difficult and inconvenient' that a party unfairly is at a 'severe disadvantage' in comparison to his opponent.'"

*Bd. of Directors, First Church of Christ*, 259 F.3d at 217 (quoting *Burger King*, 471 U.S. at 477–78, 105 S.Ct. 2174) (other citations omitted).

In this case, the failure to exercise jurisdiction would put the Plaintiffs at a "severe disadvantage" in comparison to the Defendants. By all accounts, the Defendants have vastly superior financial resources to those of the Plaintiffs. Litigation in this Court, which has a current docket, will lead to a resolution of the case within a matter of months. "In short, the district court's exercise of [ ] jurisdiction over the [ ] Defendants is consistent with

'traditional notions of fair play and substantial justice.'" *Id.*, at 218.

■ Defendant Bennett argues that he is protected by the fiduciary shield doctrine because he did nothing more than sign the joint venture agreement as a corporate officer. Under the so-called "fiduciary shield doctrine," "'the acts of a corporate officer or employee taken in his corporate capacity within the jurisdiction generally do not form the predicate for jurisdiction over him in his individual capacity.'" *Columbia Briargate Co. v. First Nat'l Bank in Dallas*, 713 F.2d 1052, 1055–56 (4th Cir.1983) (quoting *Bulova Watch Co. v. K. Hattori & Co., Ltd.*, 508 F.Supp. 1322, 1347 (E.D.N.Y.1981)). It has been the law of this Circuit since 1983 that this doctrine will not apply where jurisdiction is asserted under a long-arm statute that extends its reach to the limits of the due process clause, as does the North Carolina statute. *Id.; Korean Video Broadcasting Corp. v. D&H Visual Art, Inc.*, 67 F.3d 295 (table), 1995 WL 541711 (4th Cir.1995); *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522 (4th Cir.1987).

■ Likewise, counsel's argument that Plaintiff Duncan has no standing to sue due to the guaranty provision in the joint venture agreement is rejected. The complaint clearly alleges that Augusta Packing was never legally formed and the agreement was modified by course of conduct.[9] *See, e.g., Triangle Air Conditioning, Inc. v. Caswell County Bd. of Educ.*, 57 N.C.App. 482, 487, 291 S.E.2d 808, 811 (1982). Moreover, North Carolina substantive law is that "guarantors of a corporation's debts ordinarily may not pursue individual actions to recover damages for injuries to the corporation. Individual actions may be prosecuted, however, if the guarantor can show either (1) that the wrongdoer owed him a special duty, or (2)

that the injury suffered by the guarantor is personal to him and distinct from the injury sustained by the corporation itself." *Barger v. McCoy, Hillard & Parks*, 346 N.C. 650, 661, 488 S.E.2d 215, 221 (1997).

### III. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motions to dismiss are hereby **DENIED**.

---

9. Indeed, Plaintiffs have stated facts sufficient to warrant a claim for *quantum meruit*.